2022 PA Super 29

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHERRY HOLT | : | |
| | : | |
| Appellant | : | No. 669 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 5, 2020
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0000138-2018

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

OPINION BY KING, J.:                    **FILED:  February 17, 2022**

Appellant, Sherry Holt, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following her bench trial conviction for hindering apprehension or prosecution.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. The Commonwealth charged Appellant with hindering apprehension or prosecution related to false statements she gave to law enforcement officers in connection with their search for Appellant's son, Rahmael Holt, who was a suspect in the November 17, 2017 murder of New Kensington Police Officer Brian Shaw.

On January 30, 2020, Appellant proceeded to a bench trial.  At trial,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5105(a)(5).

three different officers testified about their interactions with Appellant on the days following the murder when they were searching for Appellant's son. First, Deputy U.S. Marshal Derek Berger testified that he was a part of the Western Pennsylvania Fugitive Task Force that was attempting to apprehend Mr. Holt. He came into contact with Appellant around 1:00 p.m. on November 19, 2017, and asked her "when was the last time she had seen Rahmael Holt?" (N.T. Trial, 1/30/20, at 11). Appellant replied that "she hadn't seen him in weeks." (*Id.*) Deputy Marshal Berger passed this information on to the other law enforcement agencies that were working to apprehend Mr. Holt.

Second, Detective Ray Dutilka, who worked with the Westmoreland County District Attorney's Office, testified that he also was investigating the death of Officer Shaw. Detective Dutilka explained that shortly after midnight on November 20, 2017, after Mr. Holt was developed as a suspect in the murder, he spoke to Appellant at the police department at the detective's request. During the interview, Appellant admitted to Detective Dutilka that Mr. Holt had come to her residence around 10:30 p.m. on November 17, 2017, which was approximately two hours after Officer Shaw's murder. Appellant stated that Mr. Holt arrived at her residence with a shorter, heavy-set black female named Vanessa (last name unknown), her niece, and two dogs. They stayed at Appellant's residence for about 30 to 45 minutes and then left. The detective explained the severity of the charges against Mr. Holt to Appellant. Appellant was also aware of the allegations against her son due to the media

attention the murder had drawn. Appellant also told the detective that she had informed her son on the night he showed up at her house, that she did not want him "to bring his shit to her house." (**Id.** at 21). Appellant did not elaborate on that statement. Mr. Holt was ultimately apprehended on November 21, 2017, around 4:30 or 5:00 a.m., approximately 24 hours after the interview with Appellant.

Third, the Commonwealth called Detective Richard Manning with the Allegheny County Sheriff's Office. Detective Manning testified that he was involved with the fugitive task force attempting to apprehend Mr. Holt. Detective Manning explained that he also spoke with Appellant on November 20, 2017, and he asked Appellant if she had any knowledge of Mr. Holt's whereabouts. Detective Manning testified that Appellant told him that "she had seen her son but…she hadn't spoken with him." (**Id.** at 24). Detective Manning then asked Appellant why she previously told law enforcement that she had not seen her son at all, and she claimed that "they didn't ask her if she had seen him, … they asked if she had spoken with him. And she stated I never spoke with him." (**Id.**) Detective Manning explained that it was not until the end of the interview that Appellant admitted to having seen (but not spoken to) Mr. Holt; initially, she denied having seen or spoken with him. Detective Manning indicated that Appellant "had specific information regarding the vehicle that Vanessa was operating, information that was very important to our fugitive investigation that she didn't provide to the Marshals or us,

initially." (*Id.* at 25-26). Detective Manning said it took several hours before Appellant ultimately disclosed this information.

After the testimony of these three officers, the Commonwealth rested. Appellant exercised her constitutional right not to present any testimony or evidence. Thereafter, the court convicted Appellant of hindering apprehension or prosecution. On June 5, 2020, the court sentenced Appellant to 12 months' probation. Appellant filed a timely notice of appeal on July 2, 2020. On July 22, 2020, the trial court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant timely complied.

Appellant now raises one issue for our review:

> Was the evidence insufficient in proving beyond a reasonable [doubt] to support a guilty verdict for hindering apprehension or prosecution?

(Appellant's Brief at 4).

Appellant argues the Commonwealth failed to establish that she intended to hinder law enforcement in the apprehension of her son, Rahmael Holt. Appellant claims that although she provided conflicting answers to law enforcement as to whether she had seen Mr. Holt, her answers did not hinder law enforcement efforts in finding him. Appellant maintains that she did not lie to Detective Manning about the vehicle that her son and Vanessa had driven to her house, but simply failed to disclose the information. Appellant concludes the evidence was insufficient to sustain her conviction, and this Court must vacate her judgment of sentence. We disagree.

- 4 -

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jackson***, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Pennsylvania Crimes Code defines hindering apprehension or prosecution, in relevant part, as follows:

> **§ 5105. Hindering apprehension or prosecution**
>
> **(a)** **Offense defined**.—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, [s]he:

\* \* \*

> (5) provides false information to a law enforcement officer.

18 Pa.C.S.A. § 5105(a)(5) (as amended Dec. 18, 1996, effective in 60 days).

There is scant Pennsylvania case law interpreting the current version of Section 5105(a)(5). We note that this law was amended in 1996, after our Supreme Court decided a similar case where police were searching for a suspect in a criminal investigation. *See Commonwealth v. Gettemy*, 591 A.2d 320 (Pa.Super. 1991), *appeal denied*, 529 Pa. 645, 602 A.2d 856 (1992). In that case, police were investigating the disappearance of Mrs. Ada Groomes and her motorhome. During the investigation, Trooper Robert Hill interviewed Linda Gettemy and her boyfriend, John Neckerauer, Jr. Both denied any knowledge of the disappearance of either Mrs. Groomes or her motorhome, but they both suggested that Mrs. Groomes might be in possession of the motorhome in Arizona, where she had allegedly joined a cult. *Id.* at 322.

Several months later, police learned that Mrs. Groomes' motorhome had been stored in Tampa, Florida, and had been brought there by Mr. Neckerauer. Mr. Neckerauer then told police that Mrs. Groomes had given him the motorhome just prior to her disappearance. The Commonwealth charged Ms. Gettemy and Mr. Neckerauer with, *inter alia*, hindering apprehension or prosecution. Ms. Gettemy subsequently filed a motion to quash for failure to make out a *prima facie* case, which the trial court granted. The

Commonwealth appealed.  ***See id.***

On appeal, the Commonwealth asked whether providing false answers in response to questions by law enforcement constituted the offense of hindering apprehension or prosecution.  Significantly, at that time, Section 5105(a)(5) criminalized someone who, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for a crime, **volunteers** false information to a law enforcement officer.  ***Id.*** (citing version of Section 5105(a)(5) effective June 6, 1973).  Ms. Gettemy argued the statute did not "apply to her because she did not **volunteer** false information to the police as proscribed by the statute." ***Gettemy, supra*** at 322 (emphasis in original).

This Court agreed with Ms. Gettemy and affirmed the order dismissing the charge against her.  In so holding, this Court initially looked to the definition of the verb "to volunteer," which means "to offer (oneself or one's services) for some undertaking or purpose; … to give, bestow, or perform **without being asked** …; to say, tell, or communicate voluntarily…" ***Id.*** at 322-23 (emphasis in original) (citing The Random House Dictionary of the English Language, copyright 1981).

In consideration of the definition of "volunteers," this Court reasoned that the statute applied only to those persons who take the initiative in supplying false information to law enforcement officials.  ***Id.*** at 323.  This Court explained that "[t]he facts of the instant case make it clear that [Ms.

- 7 -

Gettemy] did not take the initiative in supplying false information to the law enforcement officers. Her answers, misleading as they were, were given in response to the officers' questions." *Id.* at 323.

Further, this Court looked to the Official Comment to Section 5105, which stated that this section was derived from Section 242.3 of the Model Penal Code ("MPC"). The comment to that section of the MPC stated:

> Paragraph (5) prohibits volunteering false information to the law enforcement authorities. Mere failure to report a crime is not proscribed by the section. Neither is giving misleading or even false answers to inquiries initiated by the police… This provision is intended to reach those who take the initiative in throwing the police off track.

***Gettemy, supra*** at 323. Therefore, this Court held that under the version of Section 5105 in effect at that time, "providing false answers in response to questions initiated by law enforcement officers does not constitute hindering apprehension or prosecution." ***Id. See also Commonwealth v. Neckerauer***, 617 A.2d 1281 (Pa.Super. 1992) (relying on ***Gettemy*** to hold that Mr. Neckerauer's false information in response to police questioning regarding Mrs. Groomes' motorhome did not make out *prima facie* case for hindering apprehension or prosecution under version of Section 5105(a)(5) in effect at that time).

As noted, the legislature amended Section 5105(a)(5). It changed "**volunteers** false information to a law enforcement officer" to "**provides** false information to a law enforcement officer." ***See*** 1996, Dec. 18, P.L. 1074, No. 160, § 1, effective in 60 days (emphasis added). Consequently, we must

decide whether the change in statutory language compels a different result in this case than the result reached in **Gettemy**.

As our Supreme Court has explained:

> The purpose of statutory construction is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S. § 1921(a). In this respect, the language of the statute is the best indication of this intent; accordingly, where the words of the statute are clear and free from all ambiguity, the letter is not to be disregarded under the pretext of pursuing its spirit. **Id.**, § 1921(b). Only in the event of an ambiguity may we consider other aspects of the statute and the statutory process, and may we discern the General Assembly's intent by considering, *inter alia*, the various factors listed in the Statutory Construction Act, **Id.**, § 1921(c). **See Commonwealth v. Walls**, 592 Pa. 557, [566,] 926 A.2d 957, 962 (2007).

**Commonwealth v. Lynn**, 631 Pa. 541, 577, 114 A.3d 796, 818 (2015). **See also** 1 Pa.C.S.A. § 1921(c) (explaining that when words of statute are not explicit, intention of General Assembly may be ascertained by considering, among other matters: occasion and necessity for statute, circumstances under which it was enacted, mischief to be remedied, object to be attained, former law (if any) including other statutes upon same or similar subjects, consequences of particular interpretation, contemporaneous legislative history, and legislative and administrative interpretations of such statute).

Although there is no legislative history from which we may glean the legislature's intent in changing the statutory language, we can infer from the fact that the General Assembly deleted the word "volunteers" within a few years of the **Gettemy** decision and replaced it with "provides," that the

legislature sought to change the legal effect and application of Section 5105(a)(5). ***See Commonwealth v. Pierce***, 579 A.2d 963, 965 (Pa.Super. 1990), *appeal denied*, 527 Pa. 609, 590 A.2d 296 (1991) (explaining: "A change in the language of a statute ordinarily indicates a change in the legislative intent"). The new language of the amendment would be rendered superfluous if it has the same meaning as the pre-amended statute. ***See id.***

The common and ordinary meaning of the word "provides" supports this position. The term "provides," unlike "volunteers," has no suggestion of a lack of compulsion and does not include the notion that one freely initiated the act of making a false statement. It also does not exclude false statements made in response to police questioning. ***Compare*** Merriam-Webster dictionary definition of "provides" (defining "provides" as "to supply or make available" or "to make something available to") ***with*** Merriam-Webster dictionary definition of "volunteer" (defining "volunteer" as "to offer oneself as a volunteer" or "to offer or bestow voluntarily"). ***See*** Merriam-Webster.com, Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/provides (Last Accessed February 9, 2022); Merriam-Webster.com, Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/volunteer (Last Accessed February 9, 2022).

Thus, under the customary and ordinary meaning of the word, one who makes false statements in response to a police inquiry "provides" false statements, and the legislature's amendment of the statutory language was

designed to include such statements within the ambit of Section 5105(a)(5).[2]

Applying this interpretation to the facts before us, Appellant told Deputy

---

[2] We recognize that this Court reached a different result on similar facts in **Commonwealth v. Mason**, 861 WDA 2019, 2021 WL 2288091 (Pa.Super. June 4, 2021) (unpublished memorandum), *appeal denied*, ___ Pa. ___, 265 A.3d 205 (2021). In **Mason**, this Court addressed the sufficiency of the evidence surrounding the appellant's conviction for hindering apprehension or prosecution, where the appellant had given a false statement to law enforcement in the same investigation of Rahmael Holt. There, the appellant, who was Mr. Holt's cousin, claimed that he had not seen Mr. Holt in weeks and that Mr. Holt was not welcome in his home. In a split decision, this Court reversed the appellant's conviction for hindering apprehension and vacated that judgment of sentence. The majority concluded that Section 5105(a)(5) "was not intended to criminalize the giving of false or misleading answers to questions initiated by police." **Id.** at *6. The majority explained that its review of the legislative history revealed no basis to conclude that the 1996 amendment to the statute was intended to broaden the scope of criminal behavior under the statute. **Id.** Rather, it held that the Commonwealth was required to prove the appellant intended to hinder or "throw police off track" in their investigation to apprehend Mr. Holt. Further, the majority indicated that Section 5105(a)(5) requires a causal connection between the conduct of the person alleged to have hindered apprehension and the actual apprehension of the suspect. **Id.** According to the majority, no such causal connection existed in this case and the appellant's single false statement denying having seen Mr. Holt was insufficient to demonstrate that he **intended** to "throw police off track" or hinder the apprehension of Mr. Holt. **Id.**

In a dissenting memorandum, Judge Bowes took the same position we espouse in this opinion. **See id.** at *10-13.

As the **Mason** decision was not published, we are not bound by its holding. **See Commonwealth v. Phinn**, 761 A.2d 176, 180 (Pa.Super. 2000), *appeal denied*, 567 Pa. 712, 785 A.2d 89 (2001) (explaining that unpublished memoranda of this Court have no precedential value beyond law of case as to parties directly involved in that appeal). **See also** Pa.R.A.P. 126(b) (stating unpublished memorandum from this Court filed after May 1, 2019 may be cited only for **persuasive value**).

Marshal Berger that she had not seen or spoken with her son in weeks. Deputy Marshal Berger passed this information on to law enforcement agencies involved in the search for Mr. Holt. Appellant later admitted to Detective Dutilka that she had, in fact, seen Mr. Holt on the night of the murder, but Appellant claimed she had not spoken with him. Thereafter, Appellant conceded that she had told Mr. Holt not "to bring his shit to her house," but did not elaborate on that statement. (**See** N.T. Trial at 21). Finally, Appellant told Detective Manning that she had not seen Mr. Holt, but later admitted to having seen him, but not spoken with him. Despite her statements to the contrary, not only did Appellant see her son on the night of the murder, but she also withheld specific information about the vehicle that Vanessa was operating, which was very important to the investigation.

On this record, the Commonwealth presented sufficient evidence that Appellant "provided" false statements to law enforcement. Appellant knew the severity of the charges against her son at the time she was questioned by law enforcement, and admitted to telling her son she did not want "his shit" in her house on the night of the murder.[3] The trial court, as fact-finder, was free to infer that Appellant provided the various false statements to law enforcement with the intent to hinder her son's capture. To the extent

---

[3] Defense counsel argued that Appellant's statement could have referred to Appellant not wanting Vanessa, her niece, or the dogs in Appellant's house. Nevertheless, it was for the court as fact-finder to decide the meaning of Appellant's statement. **See Jackson, supra**.

Appellant argues the evidence was insufficient because her statements did not impair the efforts by law enforcement to apprehend Mr. Holt, the statute requires only the **intent** to hinder apprehension, not proof of actual hindrance.[4]  **See** 18 Pa.C.S.A. § 5105(a)(5).  Here, Appellant's intent to delay or interfere with her son's apprehension can be readily inferred from her conduct.  Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction for hindering apprehension or prosecution under the current version of the statute.  **See** 18 Pa.C.S.A. § 5105(a)(5); **Jackson, supra**.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Kunselman joins this opinion.

Judge Colins concurs in the result.

---

[4] The Commonwealth maintains that Appellant's false statements did hinder their apprehension of Mr. Holt because "[o]nce in possession of the information [A]ppellant had initially denied having any knowledge of, police located and arrested Mr. Holt." (Commonwealth's Brief at 11).  Nevertheless, we do not read the statute as requiring any such causal connection, as we do not deem actual hindrance as an element of the crime.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2022