J-S06045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN GREEN | : | |
| | : | |
| Appellant | : | No. 905 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 12, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004823-2019

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                          **FILED JUNE 8, 2022**

Appellant, Kevin Green, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for possession of a firearm, possession of an instrument of crime ("PIC"), terroristic threats, simple assault, and recklessly endangering another person ("REAP").[1] We affirm.

The trial court set forth the factual and procedural history of this case as follows:

> [Gladys] Hernandez testified that on June 12, 2019, she was visiting her aunt's house at 3013 North Darien Street in Philadelphia, Pennsylvania. At approximately 6:00 p.m., Ms. Hernandez was sitting on a bench outside of her aunt's home with her two-year-old niece when she noticed Appellant hop out of a car and walk towards her. Appellant

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 907(a), 2706(a)(1), 2701(a), and 2705, respectively.

then said, "Bitch, where's my money," cocked his gun back and smacked Ms. Hernandez with his gun on the left side of her face as he told her that he was going to "blow [her] head off." After striking Ms. Hernandez with his gun, Appellant threw the gun into a parked car and ran off. (N.T. Trial, 9/29/20, at 8, 10-11).

After the incident, Ms. Hernandez went to the police station to file a report. Detective [Luz] Varela took pictures of Ms. Hernandez's injuries to her lip and the left side of her face. The pictures show redness on the left side of her face as well as the bruising and swelling of her lip. On June 13, 2019, Ms. Hernandez went to the hospital to get treatment for her injuries. Ms. Hernandez was released from the hospital on the night of June 13, 2019, and was given medicine for her pain. (*Id.* at 18).

[Maritza] Gonzalez, who is Ms. Hernandez's aunt, owns the home in front of where the incident took place. Ms. Gonzalez testified that around 6:00 p.m., she heard Ms. Hernandez screaming from the front of her house. Ms. Gonzalez went outside and found Ms. Hernandez crying and holding the side of her face with blood coming out of her mouth. Ms. Gonzalez then saw Appellant standing out front of her house with a gun in his hand while threatening Ms. Hernandez. When Ms. Gonzalez asked what happened, Appellant told her that Ms. Hernandez "stole his money," and that "he wants his money back or it's her life." Appellant then ran off and Ms. Gonzalez took Ms. Hernandez inside to treat her injuries. (*Id.* at 48-52).

Officer [Barbara] McNally testified that around 6:00 p.m. on June 12, 2019, Ms. Hernandez came into the 25th district to file a police report. Officer McNally stated that Ms. Hernandez appeared to be distraught and had bruising on her face and lip. Ms. Hernandez explained to Officer McNally that Appellant hit her on the left side of her face with his gun and threatened to kill her. After interviewing Ms. Hernandez about the incident, Officer McNally filed a 75-48D police report. (*Id.* at 61-63).

Detective Varela testified that around 6:00 p.m., he conducted an interview with Ms. Hernandez to investigate the incident. Detective Varela took photographs of Ms.

> Hernandez's injuries and advised her to get a Protection
> from Abuse (PFA) order against Appellant. Several days
> later, Appellant was arrested after he was served with the
> PFA order. Detective Varela then obtained a search warrant
> for Appellant's home, pursuant to which he searched the
> premises and seized a magazine loaded with ammunition, a
> holster, and several rounds of ammunition. (**Id.** at 66-
> 69)[.]
>
> The Commonwealth lastly presented the testimony of
> Detective Paul Dixon, who testified that he helped Detective
> Varela execute the search warrant for Appellant's home.
> Detective Dixon testified that he and Detective Varela
> recovered a magazine loaded with ammunition laying in
> between neatly stacked jeans in Appellant's closet, a
> holster, and several rounds of ammunition. Detective Dixon
> then placed these items on a property receipt. (**Id.** at 74-
> 76).
>
> At Appellant's waiver trial on September 29, 2020, the
> Commonwealth incorporated the above-referenced
> testimony and rested its case, upon which Appellant moved
> for a judgment of acquittal. The [c]ourt granted Appellant's
> motion for a judgment of acquittal as to aggravated assault,
> firearms not to be carried without a license, and carrying
> firearms in public. Subsequently, this [c]ourt heard closing
> arguments and found Appellant guilty of the remaining
> charges.

(Trial Court Opinion, 9/14/21, at 2-4) (record citation formatting altered). On

April 12, 2021, the court sentenced Appellant to an aggregate term of five to

ten years of incarceration. Appellant filed a timely notice of appeal on April

27, 2021. On August 10, 2021, the court ordered Appellant to file a concise

statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[2]

_____

[2] The court initially issued a Rule 1925(b) order on April 29, 2021. Trial
counsel subsequently filed a petition to withdraw because he had not been
*(Footnote Continued Next Page)*

Pa.R.A.P. 1925(b). On September 1, 2021, Appellant filed a timely Rule 1925(b) statement.

Appellant raises one issue on appeal:

> Was the evidence insufficient to sustain the REAP conviction because the Commonwealth failed to prove beyond a re[a]sonable doubt that Appellant consciously disregarded a known risk of death or great bodily harm to another person[?]

(Appellant's Brief at 3).

Appellant argues the Commonwealth failed to establish that he consciously disregarded a known risk of death or great bodily injury. Appellant asserts that although he had the means to do so, he consciously went out of his way not to kill or severely injure the victim. Appellant concludes the Commonwealth presented insufficient evidence to sustain his REAP conviction, and this Court must vacate his judgment of sentence. We disagree.

Our standard of review for a challenge to the sufficiency of evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of

---

retained on appeal. After the court appointed appellate counsel, the court issued the August 10, 2021 order directing Appellant to file a Rule 1925(b) statement.

- 4 -

innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Holt*, 270 A.3d 1230, 1233 (Pa.Super. 2022) (quoting

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019)).

The Crimes Code defines REAP in relevant part as follows:

### § 2705.  Recklessly endangering another person

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A § 2705.  "Thus, the crime requires (1) a *mens rea* of recklessness, (2) an *actus reus* [of] some 'conduct,' (3) causation 'which places,' and (4) the achievement of a particular result 'danger,' to another person, of death or serious bodily injury."  *Commonwealth v. Reynolds*, 835 A.2d 720, 727 (Pa.Super. 2003) (quoting *Commonwealth v. Trowbridge*, 395 A.2d 1337, 1340 (Pa.Super. 1978)).

The *mens rea* required for REAP is "a conscious disregard of a known risk of death or great bodily harm to another person."  *Commonwealth v. Klein*, 795 A.2d 424, 427-28 (Pa.Super. 2002) (citation omitted).  "Serious bodily injury" is "bodily injury which creates a substantial risk of death or

- 5 -

which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Significantly, REAP "is a crime of assault which requires the creation of danger" so "there must be an actual present ability to inflict harm." *Reynolds, supra* at 727-28. Mere apparent ability is not enough because danger, and not the apprehension of danger, must be created. *Id.* at 728 (quoting *Trowbridge, supra*). What constitutes sufficient evidence for a REAP conviction depends on the facts and circumstances of the individual case. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa.Super. 2009).

Instantly, the court analyzed Appellant's sufficiency claim for REAP as follows:

> Here, the testimony of both Ms. Hernandez and Ms. Gonzalez established that Appellant placed Ms. Hernandez in danger of death or serious bodily injury. Appellant created such danger when he struck Ms. Hernandez across the face with his cocked gun while simultaneously threatening to kill her. Appellant presented an actual ability to inflict harm that was real and not merely apparent as he repeatedly uttered threats such as "she stole my money" and "she is going to pay for it." Ms. Hernandez had no reason to believe that Appellant was incapable of carrying out his death threat of "blowing her head off."
>
> Furthermore, upon striking Ms. Hernandez with a metal gun to a vital part of her body, Appellant consciously disregarded the known risk of inflicting serious bodily injury. Appellant was clearly in a position where he could have shot Ms. Hernandez. Moreover, the utility of Appellant's conduct to "get his money back" was greatly outweighed by the risk of inflicting serious bodily injury upon Ms. Hernandez.

(Trial Court Opinion at 5-6) (record citations omitted).

The record supports the trial court's analysis that Appellant consciously disregarded a known risk of death or serious bodily harm to another person by striking Ms. Hernandez in the face with a cocked gun. *See Klein, supra*. Although Appellant insists that he did not actually kill or cause Ms. Hernandez serious bodily injury, Appellant's creation of that danger satisfies the statutory requirements. *See* 18 Pa.C.S.A § 2705; *Reynolds, supra*. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to support Appellant's conviction for REAP. *See Holt, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/08/2022