J-S12004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VAUGHN T. STEPHENSON | : | |
| | : | |
| Appellant | : | No. 389 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 1, 2022,
in the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000021-2020.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JUNE 2, 2023**

Vaughn T. Stephenson appeals from the judgment of sentence entered

following his convictions for endangering the welfare of a child and possessing

a small amount of marijuana for personal use.[1]  We affirm.

The trial court summarized the facts of the case as follows:

[O]n November 27, 2019, officers from the Wilkes-Barre City Police Department responded to a disabled vehicle call at 86 West Chestnut Street, Wilkes-Barre City. Officer Casarella of the Wilkes-Barre City Police Department responded to the call and conducted a check of the registration of the vehicle which identified [Stephenson] as the vehicle owner. A subsequent records check returned information that [Stephenson] resided at that address and further that he had an active felony warrant. Officer Casarella knocked on the door at 86 West Chestnut Street and [Stephenson] answered the door. He was advised that he was being placed under arrest in satisfaction of the then

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4304(a)(1) and 35 P.S. § 780-113(a)(31)(i).

outstanding arrest warrant. [Stephenson] asked police to allow him to re-enter the residence to check on his child and put on his sneakers. [Stephenson] consented to officers entering the residence with him while he checked on his infant daughter and put on his sneakers.

Once inside[,] police detected a strong odor of marijuana inside the residence. A pair of digital scales, suspected marijuana and packaging materials were observed in plain view inside the living room area. [Stephenson's] then [13-month-]old child was seated on a couch near the suspected marijuana and drug paraphernalia. Also located in plain view, and later seized . . . pursuant to a search warrant, was an unsecured and loaded .45 caliber Hi-point handgun located approximately two[2] . . . feet away from [Stephenson's] child.

Officers observed that the interior of [Stephenson's] residence was in an unsanitary condition. Strong rotting food and excrement odors permeated the residence. Suspected excrement was observed in an unflushed toilet and spoiled food items were observed throughout the kitchen. The house was in a deplorable condition and after a code enforcement inspection the residence was condemned for being unfit for human habitation. Officers secured the residence and made arrangements for the safe placement of the child.

Trial Court Opinion, 8/4/22, at 1–2.

Police charged Stephenson in connection with this incident, and the case proceeded to court. Following trial, a jury found Stephenson guilty of endangering the welfare of a child, and the trial court convicted him of possessing a small amount of marijuana.[3] On February 1, 2022, the court sentenced Stephenson to 18 to 36 months of incarceration and 30 days of concurrent probation.

_____

[2] Stephenson contends that the distance between the child and the handgun was approximately five feet.

[3] The jury found Stephenson not guilty of possession of a firearm and drug paraphernalia.

- 2 -

Stephenson timely appealed. Stephenson complied with Pennsylvania Rule of Appellate Procedure 1925(b). The trial court entered a Rule 1925(a) opinion on August 4, 2022.

Stephenson raises one issue for review: "Did the Commonwealth fail to establish, beyond a reasonable doubt, that [Stephenson] knowingly violated a duty of care, protection or support owed to a child in violation of 18 Pa.C.S.[A.] § 4304(a)(1)?" Stephenson's Brief at 2. Stephenson contends that the evidence was insufficient to establish that (1) he created a dangerous situation or was aware that his conduct exposed the child to a dangerous situation and (2) his conduct offended the common sense of the community. *Id.* at 7–8.

This Court reviews a challenge to the sufficiency of the evidence under the following well-settled principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Holt*, 270 A.3d 1230, 1233 (Pa. Super. 2022) (quoting *Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa. Super. 2019)).

The crime is set forth by statute: "A parent . . . commits an offense if he knowingly endangers the welfare of a child by violating a duty of care, protection or support."  18 Pa.C.S.A. § 4304(a)(1).  "Knowingly" is defined:

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2).

We have thus articulated the elements of the offense as follows:

(1) the accused must be aware of his or her duty to protect the child; (2) the accused must be aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused either must have failed to act, or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Sebolka*, 205 A.3d 329, 337 (Pa. Super. 2019) (quoting *Commonwealth v. Smith*, 956 A.2d 1029, 1038 (Pa. Super. 2008))

Additionally, our courts have noted that this statute is "designed to cover a broad range of conduct in order to safeguard the welfare and security of children."  *Commonwealth v. Krock*, 282 A.3d 1132, 1138 (Pa. Super. 2022) (ellipsis omitted) (quoting *Commonwealth v. Mack*, 359 A.2d 770,

772 (Pa. 1976)). The specific conduct that the statute proscribes depends on "[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain." *Mack*, 359 A.2d at 772 (quoting *Commonwealth v. Marlin*, 305 A.2d 14, 18 (Pa. 1973)).

Notably, the statute does not require proof of actual injury. *Commonwealth v. Wallace*, 817 A.2d 485, 491–92 (Pa. Super. 2002). In *Wallace*, the defendant allowed his eight children to live in "terrible" conditions, with flies, maggots, and mice in the house, dirt and spoiled food on the walls, non-functioning heating and plumbing, and a hole in the roof that caused the floor to rot away. *Id.* at 488–91. Based on the lack of a heating system, the poor structural condition, and unsanitary conditions, the city code inspector condemned the home. *Id.* We held the evidence sufficient to establish that the defendant was aware that the children were exposed to a risk of harm yet failed to try to improve the conditions; we therefore affirmed his judgment of sentence. *Id.* at 492–93.

Our Supreme Court addressed endangering the welfare of children in a recent plurality decision involving a mother allowing her three-year-old to ride unrestrained in a car-for-hire. *Commonwealth v. Howard*, 257 A.3d 1217, 1219 (Pa. 2021) (opinion announcing the judgment of the court (OAJC)). Six of seven Justices agreed that the evidence was insufficient to sustain her conviction for endangering the child's welfare. Justices Todd and Donohue reasoned that the offense requires that the defendant knew that her actions would endanger the child; the "common sense of the community" prevented

such a finding under the facts of the case. *Id.* at 1227, 1230. Justice Saylor would have applied the rule of lenity to conclude that the statute did not proscribe the defendant's conduct. *Id.* at 1231 (Saylor, J., concurring). Justice Dougherty and Chief Justice Baer read the statute to require that the defendant was aware of the creation of a dangerous situation **and** aware that she violated a duty of care; they found no evidence to prove the latter element. *Id.* at 1231–32 (Dougherty, J., concurring). Justice Wecht would have abandoned "the common sense of the community" as a basis to determine what conduct is proscribed; he would have found the evidence insufficient to prove the required elements that the defendant knowingly violated a legal duty and created a situation that she knew would endanger the child. *Id.* at 1233–39 (Wecht, J., concurring).

The precedential effect of a plurality decision like *Howard* depends on whether a majority of the court agreed on a holding. *See Commonwealth v. McClelland*, 233 A.3d 717, 733 (Pa. 2020) (analyzing what was "nominally a plurality decision" to conclude that a majority of the court reached the same holding). In *Howard*, a majority of the Justices held that the offense of endangering the welfare of children requires proof that the defendant was aware that (1) he or she violated a legal duty and that (2) his or her actions would place a child in a dangerous situation. *Howard*, 257 A.3d at 1227 (OAJC), 1231–32 (Dougherty, J., concurring) ("[T]he record must support that the mother in this case was, at a minimum, aware of the creation of a situation dangerous to the child's welfare, **and** aware she violated a duty of care."),

*see* 1239 (Wecht, J., concurring) ("Section 4304(a)(1) requires proof that the accused knowingly violated a legal duty and that, in doing so, the accused created a situation that she knew presented an actual and significant risk of harm to the child.").

Further, a majority of Justices retained the "common sense of the community" standard in determining what conduct the statute covers. *Id.* at 1228 & n.16 (OAJC), 1232 (Dougherty, J., concurring) (accepting that this standard "may at times appropriately provide context to application of the EWOC statute"); *id.* at 1239–40 (Mundy, J., dissenting). *Contra id.* at 1233–37 (Wecht, J., concurring); *see id.* at 1231 (Saylor, J., concurring) (avoiding the community-standards approach in applying the rule of lenity).

With these holdings in mind, we turn to Stephenson's case. Viewed in a light most favorable to the Commonwealth, the evidence established that Stephenson cared for his 13-month-old child in a house that was dirty enough that it was condemned as being unfit for human habitation. The jury was free to reject Stephenson's claims that he was only there briefly and that the baby's room upstairs was clean, especially in light of Stephenson providing that address on his state identification card and to post bail. Although the house was not in as atrocious a condition as in *Wallace*, the record supports a finding that Stephenson knew he owed a duty of care to his 13-month-old child and he was aware that the dirty house and close proximity of the gun endangered the child's welfare. *Wallace*, 817 A.2d at 492. Furthermore, Stephenson placed the child on the couch in a room with drugs, a few feet

away from a loaded firearm. The jury could infer that a curious child more than a year old would be able to move to these dangerous items. It is reasonable to infer that Stephenson was aware of these risks to the child and that his caring for the child in this space violated his duty of care as a parent. Therefore, the evidence was sufficient to support Stephenson's conviction for endangering the welfare of a child.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/02/2023