J-S40012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DENNIS EUGENE MEYER JR. :
:
Appellant : No. 530 MDA 2025

Appeal from the Judgment of Sentence Entered March 3, 2025
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001230-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED: FEBRUARY 11, 2026**

Dennis Eugene Meyer, Jr., appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, following his convictions for various sexual assault offenses involving minors.[1] After careful review, we affirm.

The trial court summarized the relevant facts as follows:

On April 10, 2023, officers from the Silver Spring Township Police Department in Cumberland County, Pennsylvania, were dispatched to investigate a Child[L]ine[2] referral involving juvenile

---

[1] Meyer purports to appeal from the order denying his post-sentence motion. However, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2011) (en banc) (citation omitted).

[2] The "ChildLine" is Pennsylvania's state-run system for receiving verbal and electronic referrals of child abuse or neglect. **See** Commonwealth of
*(Footnote Continued Next Page)*

K.W.[,] who was [Meyer]'s 12-year-old niece. Forming the basis of the Child[L]ine referral was [K.W.]'s disclosure that [Meyer], over a period of roughly one to two years preceding the Child[L]ine report, had sexual contact with her.

As was established in more detail during [K.W.]'s trial testimony, starting when she was either [nine] or [ten] years old, [Meyer] invited her down to the basement of his home, offered her food and gifts, and then rubbed her genital area over her clothing. That conduct soon escalated to direct, "skin on skin" contact between [Meyer]'s hands and [K.W.]'s genitals, and then to [Meyer] placing his mouth on [K.W.]'s genitals. [K.W.] testified that [Meyer] touched her "a few times each month[,]" and that while she felt uncomfortable during the touching, she also didn't know whether [Meyer]'s behavior was a "normal" way for an adult to behave toward a child. After the instances of touching, [Meyer] would purchase [K.W.] gifts, tell her that he loved her, and tell her that she was his favorite.

Eventually, [K.W.] disclosed the touching to her sister, who insisted that [K.W.] inform their grandparents, which she did in January 2023. [K.W.]'s grandmother became deeply angered when she was informed of the touching and made [K.W.] feel like she did something wrong, which led to [K.W.] delaying additional disclosure of the touching by several months. Ultimately, [K.W.] did disclose the touching to one of her friends, which led to the Child[L]ine referral discussed above. As a result of that referral, [K.W.] was interviewed by the Child Advocacy Center,[3] during which she made additional disclosures concerning the sexual contact with [Meyer].

As a result of the police investigation, charges were filed against [Meyer] on May 10, 2023. The criminal information was filed on

_____

Pennsylvania Department of Human Services, https://www.pa.gov/agencies/dhs/resources/keep-kids-safe/report-child-abuse (last visited Jan. 20, 2026).

[3] The Child Advocacy Center is an agency that brings together professionals to respond to allegations of child abuse. *See* N.T. Jury Trial, 10/14/24, at 108. Its purpose is to provide services a child may need or referrals for the needed services from the time an allegation is made until the conclusion of a child's case. *Id.*

July [7], 2023, formally charging [Meyer] with the crimes of, *inter alia*, rape of a child, involuntary deviate sexual intercourse [(IDSI)], and aggravated indecent assault of a child. [Meyer]'s omnibus pre[-]trial motion was filed on August 10, 2023, pertinently seeking the production of outstanding discovery materials[ and] the allocation of fees to hire an expert witness, requesting that the court order a psychiatric evaluation of [K.W.], and seeking leave to file an amended omnibus pre[-]trial motion upon the receipt of any outstanding discovery.[4]

Trial Court Opinion, 6/18/25, at 1-4 (original footnotes omitted).

During jury selection, the following discussion regarding Juror No. 26 occurred at side bar:

THE COURT: What about [Juror No.] 26?

[THE COMMONWEALTH]: I am asking that he be stricken.

[MEYER'S COUNSEL]: I'm suggesting that that's what has complicated that jury instruction. I believe that he needs something else to determine—not just all testimony and say, okay, but he needs something more to make it—to help him determine credibility, which is what their job is.

THE COURT: But my problem is[,] he wants to hear evidence that may not exist. I don't know if we have evidence about were there any biases or [were] there no biases? I think he's—I understand you want them to use a peremptory, but I think he's far enough for cause. So[,] I'm going to strike him too. Okay. And that's [eight], and that gives us one safety net.

N.T. Jury Selection, 10/14/24, at 38-39. Meyer's counsel did not object or make any further statements prior to the side bar concluding. *See id.* at 39.

Ultimately, the jury trial in this matter occurred on October 14-15, 2024, following which the jury found [Meyer] guilty beyond a reasonable doubt of the crimes of rape of a child, statutory sexual

---

[4] After outstanding discovery materials were provided, at a pre[-]trial conference on April 17, 2024, Meyer's counsel indicated that no amended or supplemental omnibus pre[-]trial motion would be filed.

assault, [IDSI] with a child, aggravated indecent assault of a child, unlawful contact with a minor,[5] aggravated indecent assault [– lack of consent], sexual assault, corruption of minors, indecent assault of a complainant less than [thirteen] years of age, and indecent assault – lack of consent. Because the Commonwealth failed to introduce any evidence regarding [Meyer]'s age at the time of the offenses, after the verdicts were read, we granted a judgment of acquittal on the charges of statutory sexual assault and corruption of minors.

Trial Court Opinion, 6/18/25, at 5 (original footnotes omitted).

At sentencing, the trial court imposed a mandatory sentence of twenty-five to fifty years' incarceration.[6] Following sentencing, Meyer filed a timely post-sentence motion on March 13, 2025, which the trial court denied on April 3, 2025. Meyer filed a timely notice of appeal on April 25, 2025. Meyer and the trial court have both complied with Pa.R.A.P. 1925, and Meyer now raises the following questions for our review:

(1) Whether the [t]rial [c]ourt committed an abuse of discretion and/or err[ed] in striking Juror [No.] 26 for cause?

(2) Whether the evidence presented at trial was sufficient to sustain the crimes for which [Meyer] was convicted of at trial?

---

[5] We observe that section 6318 was amended after Meyer's conviction, effective August 26, 2025; at the time of his conviction, the crime was codified at subsection 6318(a)(1), and, for the sake of clarity, we will refer to it as such. *See* 18 Pa.C.S.A. § 6318(a); *see also* 2025, June 27, P.L. 6, No. 5 § 2.

[6] Because it was established at sentencing that Meyer had a prior qualifying conviction for a sexual offense, he was subject to the mandatory sentencing provision requiring minimum sentences for repeat sexual offenders. *See* 42 Pa.C.S.A. 9718.2(a)(1).

(3)     Whether the weight of the evidence presented at trial was sufficient to sustain a conviction for the crimes [Meyer] was convicted of at trial?

Appellant's Brief, at 4.

Before addressing Meyer's issues, we must address the Commonwealth's claim that Meyer waived his first issue by failing to preserve it. **See** Commonwealth's Brief, at 11. The Commonwealth claims that, because Meyer did not object at side bar when the Commonwealth requested Juror No. 26 be struck and the trial court agreed, the issue is waived on appeal.[7] **Id.**

> The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary. **Stapas v. Giant Eagle**, [] 198 A.3d 1033, 1037 ([Pa.] 2018). As a general matter, it is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). This is because, as [the Pennsylvania Supreme] Court has oft reminded, "issue preservation is foundational to proper appellate review." **In re F.C. III**, [] 2 A.3d 1201, 1211 ([Pa.] 2010). Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity. **Id**. at 1212. It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation. **Id.**

**Trigg v. Children's Hospital of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

---

[7] The trial court also maintains that Meyer has waived this issue. **See** Trial Court Opinion, 6/18/25, at 6 n.28.

In **Trigg**, our Supreme Court found the appellees had waived their argument that the trial court erred by not observing the demeanor and tenor of a prospective juror during *voir dire*. **Id.** The appellees did not object contemporaneously on the record to the judge's absence during *voir dire*, did not object when they argued, with the judge present, against the relevant juror being struck for cause, and did not raise the issue in a pre-trial motion. **Id.** The fact that appellees raised the issue in post-trial motions did not preserve issue for appeal. **Id.** at 270 (citing Pa.R.C.P. 227.1(b)).

Here, we find that Meyer has waived his first issue because he did not raise it with the trial court. Meyer's trial counsel did not object at side bar when the trial court indicated that it was going to strike Juror No. 26 for cause, nor did he raise the issue via motion prior to the conclusion of trial. Instead, Meyer raised it for the first time in his motion for post-sentence relief. Accordingly, because Meyer failed to contemporaneously object, raise the issue in a pre-trial motion, or raise the issue during trial, we conclude that Meyer has waived his argument regarding the striking of Juror No. 26. **See Trigg**, 229 A.3d at 269–70; **see also Commonwealth v. Marrero**, 217 A.3d 888, 891–92 (Pa. Super. 2019) (finding argument that juror should have been struck for prejudice waived where appellant failed to object when court indicated it found allegedly prejudicial comment harmless and did not question juror regarding comment).

Meyer's first preserved issue is that the Commonwealth put forward insufficient evidence to support his conviction for unlawful contact with a

minor. *See* Appellant's Brief, at 19-21. Meyer argues that the Commonwealth failed to prove that he "communicated with the victim, in any way, for the purpose of facilitating the alleged prohibited contact." *Id.* at 20. Meyer claims that there was no communication between him and K.W. in which "he communicated to her any intention of having sexual contact with her[,]" and that the "phone dump" of his cellphone did not show any communications between him and K.W. *Id.* at 20. Therefore, according to Meyer, his conviction for unlawful contact with a minor should be vacated.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Chisebwe*, 278 A.3d 354, 358 (Pa. Super. 2022) (quoting *Commonwealth v Holt*, 270 A.3d 1230, 1233 (Pa. Super. 2022) (citations omitted)).

The crime of unlawful contact with a minor is defined as follows:

> **(a) Offense defined.--**A person commits an offense if the person is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under any of the following provisions under this title, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> > (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1). The statute defines "contact," in relevant part, as "[d]irect or indirect contact or communication by any means, method[,] or device, including contact or communication in person[.]" **Id.** at § 6318(c).

Our Supreme Court has described section 6318 as being "intended to criminalize and punish communication designed to induce or otherwise further the sexual exploitation of children." **Commonwealth v. Strunk**, 325 A.3d 530, 543 (Pa. 2024). In a subsequent decision, our Supreme Court explained:

> Section 6318 "does not criminalize inappropriate touching of minors; other statutes accomplish that goal." **Id.** at 542. We stated that it "is perhaps best described as an anti-grooming statute[,]" although this description is imperfect. **Id.** We concluded that [s]ection 6318 "is intended to criminalize and punish communication designed to induce or otherwise further the sexual exploitation of children." **Id.** at 543. Far from black letter law, **Strunk**'s application of [s]ection 6318 was bound by the facts of that case, and it left unanswered questions regarding the scope of [s]ection 6318. For example, the Court's reference to section 6318 as an "anti-grooming statute" left open the question of what communications, in context, constitute the act of grooming prohibited by the statute. We leave it to the lower courts to apply and further elucidate the meaning of [s]ection 6318's prohibition with the benefit of briefing post-**Strunk**.

**Commonwealth v. Smith**, 343 A.3d 1062, 1079–80 (Pa. 2025).

After **Smith**, at least two cases have sought to apply and further elucidate the meaning of section 6318's prohibition. In **Commonwealth v.**

*Clegg*, 342 A.3d 63 (Pa. Super. 2025), we held that the appellant screaming at the minor complainant to "come inside the trailer and direct[ing] her to sleep in the front bedroom with him[,]" where the appellant raped her, were communications that induced and furthered the commission of the appellant's crime. *Id.* at 67. In *Commonwealth v. Reyes*, --- A.3d ---, 2025 PA Super 284 (Dec. 22, 2025), we likewise held that the appellant directing the minor complainant to sit in the front seat of his vehicle—as opposed to the back seat where she would be out of his reach—prior to his attempts to touch and seduce her were "sufficient to prove his direct communication with her 'for the purpose of engaging in an activity prohibited' by the Crimes Code chapter defining sexual offenses." *Id.* at *5 (citing 18 Pa.C.S.A. §§ 6318(a), (c)). We considered the communications in *Reyes* to be analogous to those in *Clegg* because both were a "direct communication from [the a]ppellant to the complainant that induced her to change her location, contrary to her intention, to a location that made it easier for [the a]ppellant to commit a sexual offense." *Id.* at *6 (citing *Clegg*, 342 A.3d at 67).

Here, we conclude that there was sufficient evidence to support Meyer's conviction of unlawful contact with a minor. In one instance, prior to committing a sexual offense, Meyer invited K.W. down to the basement with him under the pretense of watching a movie together, told her to sit beside him on the couch when she had otherwise intended to sit elsewhere, and then asked K.W. if she wanted him to rub her legs and feet. *See* N.T. Jury Trial, 10/14/24, at 34-35. On another occasion, Meyer again asked K.W. to come

sit with him prior to inappropriately touching her. *Id.* at 37. In both instances, Meyer communicated to K.W. to induce her to come nearer him such that it would be easier to commit a sexual offense. Furthermore, contrary to Meyer's contention, a communication does not need to explicitly state an intention of having sexual or otherwise unlawful contact to be sufficient under section 6318(a). *See Clegg*, *supra*; *see also Reyes*, *supra*. Therefore, we find that there was sufficient evidence to support Meyer's conviction for unlawful contact with a minor.

Meyer next argues that his convictions are against the weight of the evidence because of deficiencies in the evidence presented. *See* Appellant's Brief, at 21-22. Meyer claims that two aspects of K.W.'s testimony were not supported by other witnesses at trial: (1) she was treated differently, favored, and singled out by Meyer; and (2) Meyer took photos of her frequently. *Id.*

Our well-established standard of review when faced with a challenge to the weight of the evidence is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022). Accordingly, to prevail on appeal, an appellant challenging the weight of the evidence must show that "the evidence [was] so tenuous, vague[,] and uncertain that the verdict shocks the conscience[.]" *Id.*

Meyer has waived this claim by failing to preserve it in his Rule 1925(b) statement. In his Rule 1925(b) statement, Meyer framed the issue as "whether the weight of the evidence presented at trial was sufficient to sustain a conviction for the crimes [Meyer] was convicted of[.]" *See* Appellant's Rule 1925(b) Statement, at 7 (unpaginated).

An appellant must preserve a challenge to the weight of the evidence on appeal in his Rule 1925(b) statement. *See Juray*, 275 A.3d at 1048. To do so, an appellant must state **with specificity** the elements or verdicts which the appellant specifies were against the weight of the evidence. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1248–49 (Pa. Super. 2015) (finding waiver of weight claims where Rule 1925(b) statement was too vague to permit court to identify which verdicts were against weight of evidence and why) (emphasis added). "Such specificity is of particular importance in cases where, as herein, Appellant was convicted of multiple crimes, each of which contains elements that the Commonwealth must prove beyond a reasonable doubt. This is so even where the trial court issued an opinion addressing the substance of the claim." *Juray*, 275 A.3d at 1048 (citing *Commonwealth v. Parrish*, 224 A.3d 682, 700 (Pa. 2020)).

- 11 -

Here, in his Rule 1925(b) statement, Meyer did not specify which convictions or elements of the convictions he believes were against the weight of the evidence. Therefore, we find this issue waived.[8] Consequently, we affirm the judgment of sentence.

_____

[8] Even if the issue were properly preserved, we would find that the trial court did not abuse its discretion by denying Meyer's challenge to the weight of the evidence. The jury heard K.W.'s testimony and was entitled to find her credible or not. While Meyer claims that K.W.'s testimony was unsupported or contradicted by the testimony of others, we disagree. To the contrary, K.W.'s sister and aunt both provided testimony corroborating the challenged aspects of K.W.'s testimony. *See* N.T. Jury Trial, 10/14/24, at 84-85 (K.W.'s sister testifying that Meyer "always had to be around [K.W.]" and that K.W. received "way more" gifts from Meyer than she did); *id.* at 89-90 (K.W.'s sister testifying that Meyer often sought out photos of them, stating "[O]ur grandma would take pictures of [her and K.W.] and [Meyer] would say send me those pictures or [Meyer] just always had to take a picture, and I would be like, no, I don't want my picture taken, and [Meyer] would do it anyway"); *id.* at 102-04 (K.W.'s aunt recounting incident where Meyer took photos of K.W. against her wishes); *id.*, 10/15/24, at 160 (K.W.'s other aunt testifying that Meyer showed favoritism toward K.W.). The jury was entitled to accord this testimony the weight that it thought appropriate, and, in doing so, it credited K.W., her sister, and her aunts' accounts in finding Meyer guilty. Based upon our review, we find no reason to disturb these determinations. Accordingly, we conclude the trial court did not abuse its discretion in finding that the evidence supporting the jury's verdicts was not so tenuous, vague, and uncertain as to shock the conscience. Therefore, even if not waived, Meyer's weight challenge does not entitle him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/11/2026