2019 PA Super 303

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellee<br><br>v.<br><br>RASHEEN AMEER CAULK<br><br>Appellant | IN THE SUPERIOR COURT<br>OF PENNSYLVANIA<br><br><br><br><br><br>No. 1927 EDA 2018 |

Appeal from the Judgment of Sentence entered March 19, 2018
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0003430-2016

BEFORE:  GANTMAN, P.J.E., STABILE, J. and STEVENS, P.J.E.*

OPINION BY STABILE, J.:                              **FILED OCTOBER 09, 2019**

Appellant, Rasheen Ameer Caulk, appeals from his judgment of sentence of 100—240 months' imprisonment for two counts of possession of a controlled substance (cocaine) with intent to deliver ("PWID").[1]  We affirm.

On March 21, 2016 and April 20, 2016, Pennsylvania State Troopers Bromberg and Garcia conducted controlled drug purchases from Appellant through a confidential informant, Anthony Reaves.  Before the first controlled buy on March 21, 2016, Trooper Bromberg thoroughly searched Reaves and his vehicle to make sure there were no secret compartments in the vehicle where he could hide weapons, contraband or money.  Trooper Bromberg gave Reaves $4,800.00 in United States currency, which he instructed Reaves to

_____

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

use to purchase 125 grams of cocaine from Appellant. Trooper Garcia placed a recording device in Reaves' coat pocket. The controlled buy took place in the 7800 block of Lindbergh Boulevard in Philadelphia. A Jeep with Connecticut license plates pulled behind Reaves' car, and Trooper Bromberg, watching from nearby, recognized Appellant exiting the driver's side of the Jeep. Appellant entered the passenger's side of Reaves' vehicle and met with Reaves for about one minute before returning to the Jeep. Nobody else approached or was inside Reaves' vehicle. The recording device in Reaves' pocket recorded his conversation with Appellant, which the Commonwealth played for the jury. Reaves' and Appellant's voices could be heard on the recording. Following the transaction, Reaves drove to a pre-arranged location where he met with state troopers. He made no stops and had no contact with anyone else between the controlled drug buy and the post-buy meeting with the troopers. Troopers had Reaves under surveillance during the entire trip. At the pre-arranged location, troopers searched Reaves and found a large plastic bag containing cocaine that Reaves purchased with the $4,800.00. The PSP crime lab determined that the bag contained 124.5 grams of cocaine.

Before the second controlled buy on April 20, 2016, Trooper Bromberg searched Reaves and Reaves' vehicle to ensure that there were no drugs, contraband, weapons or money on Reaves' person or in his vehicle. Troopers gave Reaves $4,800.00 in United States currency with pre-recorded, photographed serial numbers, and Trooper Garcia placed a recording device in Reaves' coat pocket. At the last minute, the location of the controlled drug

buy changed from Lindbergh Boulevard in Philadelphia to Fifth and Welsh Street in Chester, Delaware County. The DEA performed aerial surveillance in addition to the troopers' ground surveillance. A videotape of this event depicted Appellant driving a white Mitsubishi and waiting at Fifth and Welsh Streets for Reaves. Reaves exited his vehicle and entered Appellant's vehicle, and they drove together to Edgmont and Fourth Streets and back to Fifth and Welsh Streets. Although the transaction was recorded and there was ambient noise, there was no conversation, no phone calls and no mention of cocaine distribution. At the conclusion of the meeting, Appellant drove away but was arrested by a Chester police officer. Reaves drove away in his vehicle directly to a meeting with troopers, who recovered a bag containing 124.64 grams of cocaine that Reaves had purchased with the pre-recorded currency. The troopers found no other money, drugs or contraband on Reaves' person or in his vehicle.

Prior to trial, on July 13, 2017, the Commonwealth sought a continuance on the ground that an extension would enable it to replace Reaves' testimony with testimony from state troopers and videotape evidence filmed by drones. The trial court continued the proceedings from July 13, 2017 to October 2, 2017. On July 31, 2017, Reaves was shot to death in front of his southwest Philadelphia apartment complex. On September 26, 2017, Appellant filed a motion *in limine* to preclude any reference to Reaves' death. Attached to Appellant's motion were two newspaper articles suggesting that Reaves was murdered in retaliation for cooperating with authorities against Appellant and

other drug dealers. On October 5, 2017, following oral argument, the trial court denied Appellant's motion.

During Appellant's jury trial, Trooper Bromberg testified that Reaves could not testify because he was deceased. The Commonwealth did not present any evidence concerning the cause of Reaves' death. Appellant took the stand and denied selling drugs to Reaves, and defense counsel argued that the Commonwealth's case failed without Reaves' testimony.

The jury found Appellant guilty of two counts of PWID. After sentencing, Appellant filed timely post-sentence motions, which the trial court denied. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On April 2, 2019, this Court dismissed Appellant's appeal due to his failure to file a timely brief. Appellant filed an application for reinstatement of his appeal and attached a copy of his proposed brief as an exhibit. On April 22, 2019, this Court granted Appellant's application for reinstatement and directed the prothonotary to docket the brief that Appellant attached to his application.

Appellant raises six issues in this appeal that we have re-ordered for the sake of convenience:

> 1. Whether the trial court erred in denying the Appellant's Motion *in Limine* where the Commonwealth sought to use the death of the informant at trial where its only purpose in doing so was to improperly prejudice the jury against the Appellant and deny him a fair trial, particularly where the Commonwealth sought to exclude the identity of the informant in pretrial motions, prior to trial, where the evidence was not probative of whether or not the

Appellant possessed or delivered drugs on March 21, 2016 and April 20, 2016[?]

2. Whether the Court erred in allowing evidence of the informant's death at [Appellant's] drug trial as the evidence was completely irrelevant to the drug charges and not probative of any issue in the case, and to the extent that the Court made a finding that the death of the informant had some evidentiary value, the prejudicial effect of that evidence outweighed its probative value, thereby resulting in an abuse of discretion by the Court?

3. Whether the trial court erred in allowing the Commonwealth['s] Attorney to argue to the Jury that the informant was dead, in an attempt to taint the Jury, suggesting that the Appellant may have been responsible for the informant's death, arose to prosecutorial misconduct, warranting dismissal with prejudice pursuant to *Commonwealth v. Jay Smith*, [citation omitted] where there was no reason to mention the informant's status, under the circumstances, and after objection of defense counsel, refused to grant a mistrial?

4. Whether the Court erred in allowing the Commonwealth to introduce at trial, evidence of the Appellant's history in renting vehicles, as the evidence was wholly irrelevant and an abuse of the Court's discretion, as the only purpose of the evidence was to show that the Appellant owed money and failed to pay for a vehicle that he rented in the past or that the Jury could conclude that he was a bad person?

5. Whether the trial court erred in denying Appellant's motion for mistrial and allowing the Commonwealth witness, Trooper Garcia, to testify at trial as to the ultimate issues in the case and offer his opinion concerning facts which were within the province of the Jury, *i.e.*, whether the Appellant was a drug dealer, whether drugs had been delivered by the Appellant to the informant in the case, Anthony Reaves, in violation of Pennsylvania decisional case law, *Commonwealth v. Carter*, [citation omitted]?

6. Whether the Trial Court erred in allowing the Commonwealth to amend the criminal information filed in this case to charge an alleged drug delivery which occurred in the jurisdiction of Philadelphia County, where the Commonwealth failed to provide evidence that the Court of Common Pleas of Delaware County had

the right and authority to preside over an alleged crime which occurred outside of its jurisdiction?

Appellant's Brief at 6-7.

Appellant's first three arguments concern the death of the Commonwealth's confidential informant, Reaves. First, Appellant contends that the trial court abused its discretion by denying his motion *in limine* to preclude the Commonwealth from informing the jury that Reaves died before trial. Appellant insists that this evidence was prejudicial because it suggested that Appellant played some role in Reaves' death to retaliate for Reaves' assistance to the state police in Appellant's case. We disagree.

> When reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. ***See Commonwealth v. Zugay***, 745 A.2d 639 (Pa. Super. 2000) (explaining that because a motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to ruling on a motion to suppress evidence, our standard of review of a motion *in limine* is the same of that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.

***Commonwealth v. Kane***, 188 A.3d 1217, 1229 (Pa. Super. 2018). The term "discretion"

> imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman*, 70 A.3d 874, 878–79 (Pa. Super. 2013). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012).

Reaves' death raised potential problems for both the Commonwealth and Appellant. Had the jury not learned that Reaves had died, it might have inferred that the Commonwealth was to blame for his absence from the witness stand. Conversely, presentation of evidence about the circumstances of Reaves' shooting might have prejudiced Appellant, because the jury might have determined that Appellant murdered Reaves in retaliation for his cooperation with law enforcement during the controlled purchases. Moreover, submission of evidence about Reaves' death might have confused the jury by transforming Appellant's PWID trial into a mini-trial about Reaves' demise. To alleviate all of these problems, the trial court found middle ground: it permitted the Commonwealth to inform the jury that Reaves died without presenting evidence about the manner in which he died. This was a reasonable exercise of the court's discretion that accommodated the needs of both parties. *Goldman*, 70 A.3d at 878-79.

Next, Appellant argues that the Commonwealth had obtained a continuance in July 2017 by arguing that it could replace Reaves' testimony with other sources of evidence. Therefore, Appellant continues, the trial court abused its discretion by allowing the Commonwealth to change its position

and "call this dead man" to testify at trial. N.T., 10/2/17, at 10-11 (argument of defense counsel). Again, we conclude that the trial court acted within its discretion. Reaves was still alive on July 13, 2017, the date the Commonwealth obtained a continuance. At that point, the Commonwealth believed that it did not need Reaves to testify because it could substitute other evidence in his place. The Commonwealth still did not need Reaves' testimony following his death on July 31, 2017 (as the verdict bears out), but it did need to inform the jury that Reaves was deceased to prevent the jury from blaming the Commonwealth for Reaves' absence. As stated above, the trial court correctly resolved this issue by permitting the Commonwealth to introduce the fact of Reaves' death without additional evidence about the cause of death.

Third, Appellant objects to the prosecutor's reference to Reaves' death during closing argument. The prosecutor stated:

> And so while the actual delivery itself happens between [Appellant], as the dealer, to Anthony Reaves, as the informant in this case, that doesn't mean that just because Anthony Reaves is now dead and unable to testify, oh, all of a sudden, no case. Ladies and gentlemen, Anthony Reeves is now dead. No question. But his death must not and cannot be a reason for immunity from all prosecution in this case. You have to, as ladies and gentlemen of the . . . jury, you have to consider the evidence as you heard it in court. And I submit to you that especially in a case like this where there is ample evidence, both direct and circumstantial of the delivery of this cocaine, I submit to you that it has been proven beyond a reasonable doubt that [Appellant] delivered that cocaine to Anthony Reaves.

N.T., 2/1/18, at 108. Appellant moved for a mistrial, claiming that the jury would infer that Appellant had something to do with Reaves' death. *Id.* at

132. The trial court denied Appellant's motion. We conclude that the trial court's decision was proper.

We review decisions to grant or deny a mistrial for abuse of discretion. **Commonwealth v. Fletcher**, 41 A.3d 892, 894 (Pa. Super. 2012). The court should grant a mistrial "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Id.** at 894-95. During closing argument, the prosecutor observed that even though Reaves was dead and was unable to testify, the Commonwealth established through circumstantial evidence that Appellant sold drugs to Reaves. Nothing the prosecutor said suggested that Appellant had anything to do with Reaves' death. The prosecutor merely stated that the Commonwealth had proven its case through other means. The record supports this statement, and the trial court properly denied Appellant's motion for mistrial.

In his fourth argument, Appellant asserts that the trial court abused its discretion by allowing the Commonwealth to present evidence that he used rental cars without renting them in his own name. Appellant argues that this evidence was both irrelevant to the PWID charges and prejudicial because it tended to show Appellant's bad character. We disagree.

The admission of evidence "is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly

abused its discretion." ***Commonwealth v. Reese***, 31 A.3d 708, 716 (Pa. Super. 2011). The Commonwealth presented evidence that Appellant did not sign any agreements for rental cars that he drove, and that the rental cars were paid for in cash rather than by credit card. This evidence was relevant to demonstrate Appellant's relationship to the vehicles used in drug transactions and Appellant's level of care in planning and carrying out illegal drug sales. The trial court acted within its discretion by permitting introduction of this evidence.

Next, Appellant argues that the trial court abused its discretion by denying his motion for a mistrial based on Trooper Garcia's testimony at two points during trial that "we" purchased cocaine directly from Appellant. On the first occasion, the prosecutor asked Trooper Garcia to identify exhibit C-19. He answered: "That's the 125 grams that we purchased from [Appellant] on April 20, 2016." N.T., 1/31/18, at 76-77. Defense counsel objected that the trooper was testifying on the ultimate issue in the case. ***Id.*** at 77. The trooper corrected himself by testifying that "this cocaine was given to Trooper Bromberg from [Reaves.] And Trooper Bromberg gave me the cocaine." ***Id.*** at 78.

The second occurrence took place during cross-examination:

**Defense Counsel**: Now you would agree with me, sir, that there was no instance, either on March 21 of April 20, 2016, where Mr. Reaves was given . . . U.S. currency by the police where he walked directly, without using the vehicle, . . . directly to [Appellant]?

Trooper Garcia: No. Both cases where we brought cocaine from [Appellant] we had the –

N.T., 1/31/18, at 95. Defense counsel moved for a mistrial, which the trial court denied. Counsel then elicited the trooper's admissions that (1) he did not see any transaction between Appellant and Reaves; (2) there was no photo of a transaction; (3) there were no fingerprints belonging to Appellant on the baggies; (4) there was no audio recording in which Appellant expressly discussed a drug transaction; and (5) while the police searched Reaves' car for secret compartments, they did not scan or x-ray the vehicle. *Id.* at 106-110.

Appellant insists that a mistrial was necessary because Trooper Garcia's testimony that "we" purchased cocaine constituted improper expert testimony on the ultimate issue of whether Appellant sold cocaine. We disagree. Following the first misstatement, Trooper Garcia corrected himself by testifying that Reaves gave the cocaine to Trooper Bromberg, who in turn gave the cocaine to Trooper Garcia. After the second misstatement, defense counsel adroitly cross-examined the trooper about what he actually saw and heard. Both misstatements were innocuous mistakes instead of expert testimony, and neither misstatement caused Appellant prejudice.

In his final argument, Appellant claims that the trial court erred by allowing the Commonwealth to amend its information to charge Appellant with the Philadelphia drug transaction on March 20, 2017. Appellant argued that the two controlled buys were not part of a single criminal episode because

they occurred a month apart, and therefore the Delaware County trial court lacked subject matter jurisdiction to adjudicate this incident.

Jurisdictional questions are pure issues of law that we review *de novo*. ***Commonwealth v. Jones***, 929 A.2d 205, 210-211 (Pa. 2007). Further, when presented with a question concerning the propriety of an amendment to an information, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.
>
> Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are: (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***In Re D.G.***, 114 A.3d 1094-95 (Pa. Super. 2015) (citation and indentations omitted).

The Delaware County trial court had jurisdiction to adjudicate the Philadelphia controlled buy.  The Judicial Code provides:

> Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

42 Pa.C.S.A. § 931(a).  Under this provision, the Delaware County trial court had jurisdiction to adjudicate "all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas" throughout the Commonwealth, including drug sales in Philadelphia.

It appears that Appellant wanted to raise a challenge to venue in Delaware County instead of a challenge to jurisdiction.  Venue relates to the right of a party to have the controversy brought and heard in a particular judicial district.  ***Commonwealth v. Bethea***, 828 A.2d 1066, 1074 (Pa. 2003).  Venue in a criminal action properly belongs in the place where the crime occurred.  ***Id.*** at 1075.  The place of trial, whether within or without the county where the alleged crime occurred, is a matter of venue, not jurisdiction.  ***Commonwealth v. McPhail***, 692 A.2d 139, 144 (Pa. 1997).  However, even if Appellant had properly styled the argument in his brief as a challenge to venue, he waived this argument by failing to object to venue in

- 13 -

an omnibus pretrial motion. Comment, Pa.R.Crim.P. 578 (request for change of venue is type of relief available in omnibus pretrial motion); *cf. Commonwealth v. Groff*, 548 A.2d 1237, 1244 (Pa. Super. 1988) (defendant waived objection that charges were time-barred under statute of limitations by failing to raise this objection in omnibus pretrial motion).

We also hold that the trial court properly permitted an amendment to the information to add the Philadelphia controlled purchase to the charges, because Appellant was on notice from the beginning of this case that the first controlled buy took place in Philadelphia. The affidavit of probable cause underlying the criminal complaint set forth the facts and location of the Philadelphia incident. The Commonwealth moved to amend the criminal complaint against Appellant at his preliminary hearing to reflect that the first drug sale occurred in Philadelphia. The Commonwealth also developed the facts concerning the Philadelphia charges at the preliminary hearing. In addition, the Commonwealth amended the criminal information on December 11, 2017 to reflect the amendments to the criminal complaint at the preliminary hearing. Thus, the amendment to the criminal information did not prejudice Appellant because he had ample notice that the Commonwealth intended to prove that the location of the first sale was in Philadelphia.

For these reasons, we affirm the judgment of sentence entered against Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/9/19</u>