J-A13035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAKE DOUGLAS BYLSMA | : | |
| | : | |
| Appellant | : | No. 897 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 18, 2022
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000223-2021

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: SEPTEMBER 8, 2023**

Appellant Jake Douglas Bylsma appeals from the judgment of sentence

entered by the Court of Common Pleas of Adams County after the trial court

convicted Appellant of disorderly conduct. After careful review, we affirm.

The trial court summarized the factual background of this case as

follows:

> The instant case arises out of an incident that occurred at
> the Adams County Courthouse (hereinafter "Courthouse") on the
> afternoon of January 8, 2021. At that time, due to concerns
> associated with the COVID-19 pandemic, public access to the
> Courthouse was limited per an order from the President Judge of
> Adams County issued on December 9, 2020.[1] Specifically, only

---

[*] Former Justice specially assigned to the Superior Court.
[1] In light of the global COVID-19 pandemic, in March 2020, our Supreme Court
declared a statewide judicial emergency and authorized the president judges
of each district to declare local judicial emergencies. ***In re General
Statewide Judicial Emergency***, 228 A.3d 1281 (Pa. Mar. 16, 2020). Even
*(Footnote Continued Next Page)*

direct parties to a proceeding and their counsel were permitted to enter the Courthouse for courtroom proceedings. Non-parties were not permitted to physically be present in the courtroom for proceedings, but with advance permission from Court administration, a non-party could go to the County's Human service building to view proceedings via a video platform called WebEx.

On the afternoon of January 8, 2021, Appellant, who was not a party to a proceeding and did not have permission to enter the Courthouse, entered the front lobby area of the Courthouse with his cell phone mounted on his chest for video recording purposes. Adams County Security Director Mark Masemer ("Masemer"), who testified at the summary appeal hearing, was in his office adjacent to the front lobby when Appellant first entered the Courthouse. When he heard Appellant's voice, Masemer went out to the lobby to speak with him. At this time, other security officers were asking Appellant why he was there and telling him to turn off his recording device. Appellant explained that he was there for a particular hearing, and Masemer explained that he did not have permission to be in the building but could have sought permission to watch the proceeding remotely if he desired. Masemer asked Appellant to leave the building and asked Appellant to turn his phone off but Appellant refused to do both. Appellant argued to Masemer that he felt his rights were being violated because he was being denied access to the Courthouse and because he was not permitted to take any video. Appellant became agitated and began speaking with other officers and showing them various papers.

Shortly after Appellant began arguing with Masemer and the other officers, a female desk officer went out the front doors of the Courthouse to alert incoming courthouse visitors, including a litigant and an attorney, of the altercation occurring inside. To conduct a security screening of that litigant and attorney, the

_____

after the statewide judicial emergency had ceased, the Supreme Court empowered the president judge of each district to enter self-effectuating declarations of judicial emergency and take appropriate measures including "limit[ing] in-person access and proceedings in order to safeguard the health and safety of court personnel, court users, and members of the public." *In re General Statewide Judicial Emergency*, 234 A.3d 408, 409 (Pa. May 27, 2020).

female officer escorted them around the normal security checkpoint into a side area of the lobby where screening usually does not occur. This was done to avoid the area in which Appellant was arguing with the officers. Meanwhile, other prospective courthouse visitors were forced to stand outside the building and wait, and some chose to simply leave the Courthouse rather than try to gain access.

Appellant continued to try to convince the officers that he should be granted access to the Courthouse, and as more and more officers converged on Appellant and told him to leave the Courthouse building, he became increasingly louder and argumentative. Ultimately, Masemer touched Appellant's right arm to try to get him to leave, and Appellant resisted and caused himself to drop to the floor. At that point, Corporal Samuel Shipley, who also testified at the summary appeal hearing, told Appellant that he was under arrest and placed him in handcuffs. Officers then took Appellant in a service elevator to an area containing holding cells. After reviewing the surveillance video of the incident,[FN1] this Court determined that the entire encounter between Appellant and the officers lasted approximately 12 or 13 minutes.

> [FN1:] The Courthouse surveillance video of the incident was entered into evidence as Commonwealth's Exhibit #2. Appellant's own video of the encounter, which he recorded with his cell phone and later posted on YouTube, was entered into evidence as Commonwealth's Exhibit #3.

Trial Court Opinion (T.C.O.), 8/23/22, at 2-4 (citations omitted).

Appellant was charged by criminal complaint with defiant trespass, disorderly conduct, and institutional vandalism. Shortly thereafter, the Commonwealth referred the case to the Attorney General's Office. The Commonwealth asserts that the referral was appropriate as Appellant had filed a lawsuit against an assistant district attorney in Adams County and had accused various county officials of a racketeering scheme to retaliate against Appellant.

On January 15, 2021, the Honorable Michael George, President Judge of Adams County, issued an order providing that all the Court of Common Pleas judges and magisterial district judges in the Fifty-First Judicial District recused from this matter and directing the matter be referred to another Court of Common Pleas judge. As discussed *infra*, the Supreme Court ultimately appointed the Honorable Richard A. Lewis to preside over the case.

On February 25, 2021, the Attorney General's Office entered its appearance as counsel for the Commonwealth. On March 5, 2021, the Commonwealth filed a criminal information charging the same offenses as listed in the criminal complaint. On March 18, 2022, at a pretrial motions hearing, the Commonwealth filed an amended information reducing the disorderly conduct charge to a summary offense and withdrawing the remaining charges. Notes of Testimony (N.T.), 3/18/22, at 26-27.

In an order dated April 29, 2021, the trial court authorized Appellant to proceed as a *pro se* litigant after finding Appellant knowingly and voluntarily waived his right to counsel. After a summary trial was held on May 18, 2022, the trial court convicted Appellant of disorderly conduct and sentenced him to pay a $200.00 fine and "all fees, fines, and costs mandated by law." Sentencing order, 5/18/23, at 1. The trial court placed Appellant on ninety days of probation to ensure payment of the fine and costs.

Appellant retained counsel to file this timely appeal and complied with the trial court's directions to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 4 -

Appellant raises the following issues for review on appeal:

1. Whether the Attorney General lacked authority to prosecute [Appellant] under the Commonwealth Attorneys' Act.

2. Whether the trial court lacked capacity to hear the case.

3. Whether the evidence supported the trial court's implicit finding that the evidence was sufficient to prove that [Appellant] created a hazardous or physically offensive condition and that his actions served no legitimate purpose.

4. Whether costs by the Clerk of Courts exceed the costs allowed for a non-vehicle summary conviction under 42 Pa.C.S.A. § 1725.1(b) and are consequently illegal.

Appellant's Brief, at 4-5 (footnotes omitted).

First, Appellant claims the Attorney General's Office lacked authority to prosecute him under the Commonwealth Attorneys Act (71 P.S. § 731-101 *et seq.*) as the Attorney General failed to tender proof of its authority to prosecute this case.

As an initial matter, we address the Commonwealth's claim that Appellant waived his challenge to the Attorney General's authority to prosecute the case as Appellant failed to raise this issue in his pretrial motion. Appellant first raised this argument at his summary trial.

Our Supreme Court has held that a challenge to the authority of the Attorney General to prosecute a case should be presented to the trial court in a defendant's omnibus pretrial motion. ***Commonwealth v. Cosgrove***, 680 A.2d 823, 826 (Pa. 1996). A defendant's failure to raise an issue in an omnibus pretrial motion waives the argument when relief is available via such a motion. ***See Commonwealth v. Caulk***, 220 A.3d 1102, 1112 (Pa.Super. 2019)

(finding the defendant waived his venue challenge by failing to object to venue in a pretrial motion).

In response, Appellant alleges that he has presented a non-waiveable challenge to prosecutorial *jurisdiction*. In support of this claim, Appellant cites to ***Commonwealth v. Khorey***, 555 A.2d 100 (Pa. 1989) for the proposition that "[a]n attack on the authority of the attorney general is non-waiveable, for an objection to the lack of subject matter jurisdiction cannot be waived." ***Id***. at 106 n. 10.

However, Appellant misinterprets the ***Khorey*** opinion which actually contains a holding contrary to his argument. In that case, Khorey filed a pretrial motion claiming the attorney general lacked authority to initiate the prosecution under the Attorneys Act. Khorey also claimed that the criminal information was legally invalid as the assistant attorney general that signed the information could not show the Commonwealth had the authority to prosecute Appellant.

However, Khorey subsequently pled guilty to all the charged crimes and withdrew his motion in exchange for the Commonwealth's recommendation of a sentence of probation. Nevertheless, after the trial court dismissed similar charges against Khorey's co-defendant who successfully challenged the attorney general's authority to prosecute his case, Khorey attempted to withdraw his guilty plea. Khorey claimed his plea was unknowing as he was not informed his charges would have been dismissed had the trial court granted his petition challenging the authority of the attorney general.

The Supreme Court determined that Khorey's challenge to the prosecutorial authority of the attorney general was a waivable argument which Khorey did in fact waive when he entered a guilty plea in exchange for the prosecution's recommendation of a probationary sentence. *Id*. at 12 (noting that Khorey's "[w]aiver of the right to challenge the authority of the attorney general "was part of the price which he paid for the sentence of probation").

However, the Supreme Court found Khorey also raised a non-waivable challenge to the *trial court's* jurisdiction in claiming the "attorney general's lack of authority to initiate the prosecution under the Attorneys Act *deprived the Court of Common Pleas of subject matter jurisdiction*" based on the validity of the criminal information. *Id*. (emphasis added). The Supreme Court observed that "*couched in these terms*, Khorey's attack on the authority general is non-waivable, for an objection to lack of subject-matter jurisdiction can never be waived." *Id*. n. 10 (emphasis added).

Ultimately, the Supreme Court rejected Khorey's suggestion that the trial court lacked subject matter jurisdiction simply because the criminal information was signed by an assistant attorney general rather than a district attorney. The Supreme Court acknowledged there is a rebuttable presumption that a facsimile signature on a criminal information is legally valid, Khorey waived the right to challenge the signature's validity by entering a guilty plea, and Khorey did not claim that the information failed to provide notice of the charges against him. Accordingly, the Supreme Court concluded that neither

the Attorneys Act nor the criminal information deprived the trial court of jurisdiction to accept Khorey's guilty plea.

In this case, Appellant did not challenge the trial court's jurisdiction over this matter but limited his claim to assert that the Attorney General did not provide adequate proof of authority to prosecute this case under the Attorneys Act. Appellant waived this specific argument challenging the prosecutorial authority of the Attorney General when he failed to raise it in his omnibus pretrial motion. *Caulk*, *supra*.

Even assuming this claim has not been waived, it is clearly meritless. The Attorneys Act specifically provides the Attorney General with the power to prosecute in any county criminal court in various circumstances which include "upon the request of a district attorney … who represents that there is a potential for an actual or apparent conflict of interest on the part of the district attorney or his office." 71 P.S. § 732-205(a)(3).

The Commonwealth indicates that it referred this case to the Attorney General due to civil and criminal allegations Appellant had brought against a county prosecutor and other local authorities. Appellant stated on the record at the summary appeal hearing that he had filed a civil action against an assistant district attorney in the Adams County District Attorney's Office. N.T., 5/18/22, at 32. Appellant also repeatedly argued that several county officials worked in concert to engage in a racketeering scheme and had lodged the instant charges against Appellant in retaliation for his actions against these officials. *Id*. at 32-34, 40.

Thus, we agree that it was reasonable for the Adams County District Attorney to find there was potential for an apparent conflict of interest on the part of the district attorney that warranted the referral of the case to the Attorney General's office. Appellant is not entitled to relief on this claim.

Second, Appellant claims that Judge Lewis lacked capacity to hear the case. To analyze this issue, we must review the procedural history of the Judge Lewis's appointment.

As noted above, after charges were filed in this case, all of the Court of Common Pleas judges and magisterial district judges in the Fifty-First Judicial District recused from this matter. Two additional judges, the Honorable Albert H. Masland and the Honorable Joseph C. Madenspacher, also recused.

On January 6, 2022, President Judge George filed a request with the Administrative Office of Pennsylvania Courts (AOPC), asking that a judge be temporarily assigned to preside over this case. However, Judge George indicated that he was requesting a judge "[t]o sit as directed for the period 01/10/2022 to 01/10/2022." Request for Assignment of Judge, 1/6/22, at 1. The Court Administrator recommended Judge Lewis for the assignment and certified that Judge Lewis was available to preside in this matter. *Id*.

On January 13, 2022, this request was approved by the late Chief Justice Max Baer of the Pennsylvania Supreme Court, who certified that Judge Lewis "is vested with the same power and authority of the requesting district for the purposes and period set forth." Order, 1/13/22, at 1.

Appellant argues that Judge Lewis lacked capacity to preside over his trial which was held on May 18, 2022 as the Supreme Court's order granting him authority to preside in this case was only valid for one day (January 10, 2022), as this was the period requested by Judge George. Appellant contends that Judge Lewis's authority did not extend beyond this date.

Judge Lewis rejected Appellant's claim as it found that "[r]egardless of the precise wording of the order, it is clear that the undersigned's assignment to this matter took effect on January 10, 2022, and it is beyond reason to suggest that the undersigned's assignment would last for merely one day." T.C.O. at 5.

When reading Judge George's request for an appointment of a judge to preside in this case from January 10, 2022 to January 10, 2022 in conjunction with the January 13, 2022 approval of this request, the order contains an obvious typographical error. The courts could not have approved Judge Lewis to preside in this matter for a single day that occurred three days in the past.

Moreover, the order appointing Judge Lewis was issued pursuant to the Pennsylvania Rules of Judicial Administration which specifically provide the following:

> *Duration of Assignment*: Unless otherwise provided in the order of assignment, the order shall *continue in effect after its stated expiration date* until unfinished business pending before the assigned judge is completed.

Pa.R.J.A. 301(C)(3) (emphasis added).

- 10 -

Thus, although the order stated a specific period of time for Judge Lewis's appointment, it did not prohibit Judge Lewis's appointment from continuing after the stated expiration date to complete unfinished business, which included Appellant's motions and trial. As such, we conclude that Judge Lewis did not err in finding he had the capacity to preside over this matter.

Third, Appellant challenges the sufficiency of the evidence supporting his conviction for disorderly conduct. Our standard of review for a challenge to the sufficiency of the evidence is well-established:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa.Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno***, ***supra*** at 136.

***Commonwealth v. Juray***, 275 A.3d 1037 (Pa.Super. 2022) (quoting ***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa.Super. 2011)).

To sustain a conviction for disorderly conduct, the prosecution must prove that the individual, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof":

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;J
>
> (2) makes unreasonable noise;
>
> (3) uses obscene language, or makes an obscene gesture; or

>(4) *creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.*

18 Pa.C.S.A. § 5503 (emphasis added).

Appellant specifically claims there was insufficient evidence to sustain his conviction under Section 5503(a)(4) as the prosecution did not prove he created "a hazardous or physically offensive condition." Appellant characterizes his actions as a "peaceful audio and video recording as a citizen journalist" that did not threaten any member of the public or any property. Appellant's Brief, at 26-27. We disagree.

Appellant ignores the fact that he attempted to enter the courthouse in the midst of a judicial emergency declared during the COVID-19 pandemic during which access to the courthouse was restricted for limited purposes and only permitted with prior approval. Even after authorities explained to Appellant that he was not authorized to be in the courthouse but could alternatively seek permission to view court proceedings virtually, Appellant engaged in a heated altercation with court security and refused to comply with their repeated requests that he leave the premises.

Appellant's antics affected members of the public, including a litigant and attorney who were scheduled to appear in court at that time. These individuals had to be escorted by security personnel around the normal security checkpoint to avoid the altercation with Appellant. Other individuals who sought to gain legitimate access to the premises were told to wait outside the courthouse until the altercation had ended. As such, multiple individuals chose to leave the courthouse instead of continuing to wait to gain access.

Thus, we conclude that Appellant intentionally or recklessly created a risk of causing public inconvenience, annoyance, and alarm. Appellant's attempt to gain unauthorized access to the courthouse also created "a hazardous or physically offensive condition" due to the risk of transmission of COVID-19 as well as the perception Appellant created for those who were legitimately on the premises.

We also reject Appellant's claim that his actions were permissible because they served a "legitimate purpose" including "constitutionally-protected activity." Appellant's Brief, at 27. Appellant does not specifically enumerate which constitutionally protected right he was deprived of during the events at issue, but simply argues that he had the right to access the courthouse and videorecord the lobby with his phone camera. In addition, Appellant does not challenge the constitutionality of the Supreme Court's order allowing districts to limit in-person access to courthouses in the interest of public health and safety during the COVID-19 pandemic.

As noted above, at the time of the events in question, access to the courthouse was limited to those individuals who obtained prior approval for limited purposes. It is undisputed that Appellant did not have authorization to be on the premises to view court proceedings as a non-party.

As such, Appellant has not demonstrated that he had a legitimate purpose for his actions or even the right to be in the courthouse at that time. Therefore, the trial court did not err in denying his sufficiency claim.

Lastly, Appellant claims that the trial court clerk of courts illegally assessed him numerous individual fees that totaled $819.75 in court costs. This Court has held that "[c]osts must not be assessed except as authorized by law, and that the burden of justifying, by a preponderance of the evidence, costs imposed upon a defendant rests upon the Commonwealth." ***Commonwealth v. Gill***, 432 A.2d 1001, 1004 (Pa.Super. 1981) (citing ***Commonwealth v. Coder***, 415 A.2d 406, 410 (Pa. 1980) and ***Commonwealth v. Houck***, 335 A.2d 389 (Pa.Super. 1975)). A challenge to the authority of the court to impose costs challenges the legality of his sentence. ***Commonwealth v. Childs***, 63 A.3d 323, 325 (Pa.Super. 2013) (citing ***Commonwealth v. Garzone***, 993 A.2d 306 (Pa.Super. 2010)).

In this case, the trial court indicated in its opinion that in sentencing Appellant on May 18, 2022, it ordered Appellant to pay a $200 fine and the costs of prosecution. However, the calculation of the costs of prosecution were made by the Adams County Clerk of Court's Office and docketed in an itemized account on May 24, 2022. The trial court found "no reason to question the calculations of the Clerk of Court, but … defer[red] to the Superior Court for resolution of this final issue raised by Appellant." T.C.O. at 9.

Appellant does not challenge any of the individual fees listed in the Clerk of Courts' itemized list of costs. Instead, Appellant claims his costs were limited by statute under 42 Pa.C.S.A. § 1725.1:

> **(b) Criminal cases.--**Subject to subsection (f), the costs to be charged by the minor judiciary or by the court of common pleas

- 14 -

where appropriate in every criminal case, except as otherwise provided in this section, shall be as follows:

(1) Summary conviction, except motor vehicle cases --- $28.50

(2) Summary conviction, motor vehicles cases, other than paragraph (3) --- $22.50

(3) Summary conviction, motor vehicle cases, hearing demanded---- $27.50

(4) Misdemeanor --- $32.50

(5) Felony --- $37.50

42 Pa.C.S.A. § 1725.1. Section 1725.1(f) provides for an annual increase in costs for inflation.

We are not persuaded by Appellant's argument that pursuant to Section 1725.1, his costs of prosecution could not have exceeded $28.50, the amount designated for non-vehicle summary matters. The amounts set forth in Section 1725.1 are mandatory county court costs, the amount of which varies depending on the grading of the criminal offense. *See Sherwood v. Pennsylvania Dep't of Corr.*, 268 A.3d 528, 545 (Pa.Cmwlth. 2021).[2] Section 1725.1 does not limit the Clerk of Courts from imposing certain fees or from establishing a fee schedule to collect funds for the services it performs. *See* 42 P.S. § 21061.

_____

[2] We have recognized that "[a]lthough decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *In re Walker*, 208 A.3d 472, 475 n. 3 (Pa.Super. 2019) (quoting *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 308 n.7 (Pa.Super. 2012)).

In this case, we observe that the majority of the fees in the itemized list of costs of prosecution were clerk of court "filing fees," charged in connection with the vast number of filings Appellant submitted while representing himself *pro se* before the lower court.

Therefore, we conclude there is no merit to Appellant's claim that the clerk of courts illegally imposed unauthorized court costs.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/08/2023