J-S32026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
           :        PENNSYLVANIA
           :
      v.           :
           :
           :
DAIQUAN MAURICE DICKERSON     :
           :
     Appellant     :     No. 37 MDA 2023

Appeal from the Judgment of Sentence Entered May 27, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001016-2020

BEFORE:   DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:      **FILED: NOVEMBER 6, 2023**

DaiQuan Maurice Dickerson appeals from the judgment of sentence entered following his convictions for murder of the first degree, conspiracy, and related offenses.[1] We affirm.

On December 18, 2019, Officer (now Detective) Daniel Craven of the York City Police Department filed a criminal complaint against Dickerson charging him with criminal homicide and related offenses. The case proceeded to jury trial beginning on March 14, 2022.

The evidence at trial established that Dickerson lived in an apartment with Sterling Frantz. On December 12, 2019, Dickerson fronted marijuana to Frantz. Frantz arranged to sell it to Emily Shoemaker; he would then repay

---

[1] 18 Pa.C.S.A. §§ 2502(a) (murder of the first degree), 903 (conspiracy), 901(a) (attempt to commit criminal homicide), 2702(a)(1) (aggravated assault), and 6106(a)(1) (carrying a firearm without a license).

Dickerson and keep the rest of the sale price. Frantz got into Shoemaker's green Kia Soul to complete the transaction. Shoemaker and two of her friends then grabbed Frantz, took the marijuana, and pushed him out of the car.

Frantz returned to the apartment and told Dickerson that he had been robbed. Dickerson asked Frantz if he wanted to go for a ride, and the two left in Dickerson's girlfriend's car. Dickerson talked about being tired of losing money and said that something had to change. He drove around until they found Shoemaker's car. Dickerson pursued the car, flashed his headlights, and pulled forward into the opposite lane beside it. Frantz testified that Dickerson lowered the passenger side window, pulled a gun from his pocket, and shot repeatedly. Dickerson testified that it was Frantz who told him to follow the Kia and who shot at the victims while Dickerson had bent over.

Shoemaker screamed. Her car crashed, and she died from multiple gunshot wounds. Her two passengers were injured. Dickerson drove off and arranged for an acquaintance to remove the shell casings from the car. He and Frantz returned to the apartment to shower and get rid of their clothes.

The jury found Dickerson guilty of the above crimes. On May 27, 2022, Dickerson was sentenced to an aggregate term of life plus 20 to 40 years of imprisonment. On June 6, 2022, Dickerson filed post-sentence motions, including a motion for a new trial based on the weight of the evidence. The Clerk of Courts entered an order denying Dickerson's post-sentence motions by operation of law on December 30, 2022.

Dickerson filed a notice of appeal on January 6, 2023.[2] He complied with Pennsylvania Rule of Appellate Procedure 1925(b). The trial court entered a Rule 1925(a) opinion on May 10, 2023.

Dickerson presents three issues for this Court's review:

1. Was the evidence presented at trial sufficient to convict [Dickerson] of criminal conspiracy to commit first-degree murder when the evidence does not establish beyond a reasonable doubt that there was actually a conspiracy between [Dickerson] and the alleged co-conspirator to commit the murder at issue in this case?

2. Did the trial court err when it rejected [Dickerson's] claim that the verdict in this case went against the weight of the evidence, when the sole witness directly implicating [Dickerson] was seeking a deal from the Commonwealth on similar charges based on the same incident, and is so unreliable and contradictory that it is incapable of supporting a guilty verdict against [Dickerson] in this matter?

3. Did the trial court err when it failed to declare a mistrial in this matter, when . . . the trial court's statements regarding [Dickerson's] counsel during trial created a bias against [Dickerson] in the eyes of the jury?

Dickerson's Brief at 8 (excess capitalization omitted).

---

[2] We treat Dickerson's notice of appeal as timely. *See Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003) (finding a breakdown in court operations where the Clerk of Courts did not enter an order denying post-sentence motions at the time specified in Pa.R.Crim.P. 720(B)(3)(d)). We remind counsel that in a criminal case, an appeal lies from the judgment of sentence, not the order denying post-sentence motions. *Commonwealth v. Stevenson*, 287 A.3d 903, 904 n.1 (citing *Commonwealth v. Dreves*, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (*en banc*)).

## 1. Sufficiency of the Evidence

First, Dickerson contends that the evidence was insufficient to sustain his conviction for conspiracy to commit murder. He emphasizes that Frantz minimized his own involvement by testifying that he was just going to go for a drive and smoke, that the pair did not discuss the robbery during the drive, and that Frantz refused to identify the car because he did not want anything to do with what was going to happen. Therefore, Dickerson argues that there was no evidence that he and Frantz shared a criminal intent to commit murder.

This Court applies a well-established standard to a claim implicating the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Holt*, 270 A.3d 1230, 1233 (Pa. Super. 2022) (quoting *Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa. Super. 2019)) (brackets omitted).

The elements of the underlying crime of murder of the first degree are "(1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill." *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008) (citing 18 Pa.C.S.A. § 2502(a) and *Commonwealth v. Spotz*, 759 A.2d 1280, 1283 (Pa. 2000)). The elements of criminal conspiracy are "(1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another . . . to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." *Id.* (quoting *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004)); *see* 18 Pa.C.S.A. § 903(a)(1).

"In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by 'the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators.'" *Commonwealth v. Johnson*, 985 A.2d 915, 920 (Pa. 2009) (quoting *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1998)). If the object of conspiracy is homicide, any conspirator "can be convicted of first-degree murder regardless of who inflicted the fatal wound." *Id.* (quoting *Montalvo*, 956 A.2d at 932).

Here, the evidence was sufficient for the jury to find that Dickerson and Frantz agreed that they would kill Shoemaker. As the trial court summarized:

> Mr. Frantz told [Dickerson] about the robbery, who had robbed him, and what kind of vehicle they were driving. Both Mr. Frantz and [Dickerson] lost money as a result of that robbery, and were both angered by it. [Dickerson] and Mr. Frantz subsequently got into a vehicle and drove around together until they located [Shoemaker] in her vehicle, and [they] shot and killed her.
>
> From the foregoing, the jury could reasonably infer that [Dickerson] and Mr. Frantz tacitly agreed to hunt down [Shoemaker] and kill her in retaliation for the robbery that occurred earlier. Because the object of the conspiracy was successfully carried out, the murder itself was the overt act for purposes of the conspiracy statute.

Trial Court Opinion, 5/10/23, at 6–7.

We agree with the trial court's reasoning. Although Frantz disclaimed any desire to be involved in shooting at Shoemaker's car, the jury could infer from his actions—telling Dickerson about the robbery and riding with him as they looked for the car—that the two agreed to kill Shoemaker. Furthermore, Dickerson's own testimony that Frantz told him to follow the car and that Frantz shot at it repeatedly would also support the conclusion that Frantz had agreed to the object of the conspiracy. Therefore, the evidence was sufficient to sustain Dickerson's conviction for criminal conspiracy to commit murder, and Dickerson's first issue fails.

## 2. Weight of the Evidence

Second, Dickerson argues that the trial court abused its discretion by finding that the verdict was not against the weight of the evidence. He notes

that the Commonwealth's only evidence identifying him as the shooter was the testimony of Frantz. Dickerson urges that because Frantz was also facing criminal charges for murder and conspiracy, Frantz was a corrupt source who had an incentive to testify to receive favorable treatment. He thus concludes that the jury's verdict should shock one's sense of justice, and his case should be remanded for a new trial.

This Court reviews a weight-of-the-evidence claim under the following principles:

> First, . . . the weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses. Second, a verdict will only be reversed on this basis where the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court. Third, the fact-finder is charged with the responsibility to resolve contradictory testimony and questions of credibility, and we may not substitute our judgment in place of the fact-finder.
>
> A motion for a new trial based on a weight-of-the-evidence claim . . . is addressed to the discretion of the trial court, and therefore, we review only the [trial] court's exercise of discretion and not the underlying question of whether the verdict is against the weight of the evidence. When reviewing a trial court's determination on a weight claim, we give the gravest consideration to the findings and reasons advanced by the trial judge because it is the trial judge, not the appellate court, who had the opportunity to see and hear the evidence presented.

*Commonwealth v. Fuentes*, 272 A.3d 511, 516 (Pa. Super. 2022) (brackets, quotations, and citations omitted).

Here, after Dickerson's post-sentence motion for a new trial was denied by operation of law, the trial court explained its treatment of Dickerson's

weight-of-the-evidence claim in its Rule 1925(a) opinion. The trial court observed that "the jury was well aware of the charges that Sterling Frantz was facing, as well as what he was hoping to get for testifying." Trial Court Opinion, 5/10/23, at 8. Further, the court observed that many of Frantz's statements were corroborated with other evidence at trial. *Id.* at 8–9. Therefore, the trial court concluded that the verdict was consistent with the evidence and did not shock its conscience. *Id.* at 9–10.

We discern no abuse of discretion. The trial court was in a position to observe all the witnesses testifying, including Frantz. A review of the record confirms that the jury was apprised of Frantz's charges and expectations, as well as the other evidence from which it could infer that Frantz was testifying accurately. Therefore, the trial court did not abuse its discretion, and Dickerson's second issue fails.

### 3. Denial of Mistrial

Third, Dickerson argues that the trial court erred in denying his motion for a mistrial. He contends that the trial court repeatedly displayed discord with defense counsel, showed disrespect in front of the jury and deprived Dickerson of a fair trial. This culminated during cross-examination of Frantz's girlfriend Trinity Rebman, when the trial court spoke towards counsel:

> Q. And at this point in time you indicate -- I believe you actually told this to the police, you actually got out of bed and then looked out the window; is that right?
>
> A. Our bed was right near our window so --

Q. It's a yes or no, did you look out the window?

A. Yes.

THE COURT: Give her a chance to answer [your] question, sir. Next question.

[Defense counsel]: But I didn't ask her --

THE COURT: Give her a chance to answer your question.

N.T., 3/16/22, at 457–458.

In chambers, counsel expressed that the trial court had been displaying a bad attitude towards him, which could turn the jury against Dickerson. He claimed two other incidents also reflected the issue:

First, during jury selection, defense counsel spoke about the burden of proof. He prompted the prospective jurors: "If you don't agree with that, please stand. For the record there is no response." The trial court said, and defense counsel repeated, "No one has arisen." The court then stated:

THE COURT: You can make all the faces that you want, sir, but I'm going to have to make sure that the record is clear. Go ahead, ask your next question.

[Defense counsel]: I will, Your Honor.

N.T., 3/14/22, at 88–90.

Second, in the cross-examination of one of the victims, the prosecutor raised an objection and requested a sidebar. The sidebar was conducted without headphones, and defense counsel later asserted that the trial court raised its voice when it told defense counsel not to read from the witness' transcript.

Dickerson moved for a mistrial based on these incidents. The trial court denied the motion and instructed the jury not to draw any inferences from the interactions between the court and counsel. *Id.* at 489.

This Court reviews a trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Leap*, 222 A.3d 386, 392 (Pa. Super. 2019) (citing *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013)). A trial court abuses its discretion "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Caulk*, 220 A.3d 1102, 1108 (Pa. Super. 2019) (quoting *Commonwealth v. Goldman*, 70 A.3d 874, 878–79 (Pa. Super. 2013)).

> A mistrial is an extreme remedy that is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Bryant*, 67 A.3d at 728. "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial." *Commonwealth v. Caldwell*, 117 A.3d 763, 774 (Pa. Super. 2015) (*en banc*). When a trial court gives adequate cautionary instructions to the jury, it is not necessary for the court to declare a mistrial. *Bryant*, 67 A.3d at 728. "The law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001).

*Leap*, 222 A.3d at 392 (citations altered).

Our Supreme Court has held that a "highly provocative event" between the trial court and defense counsel may deprive a defendant of a fair trial

- 10 -

based on "a reasonable probability the incident may have distracted the jury from an objective appraisal of those legitimate issues presented on the question of guilt or innocence." ***Commonwealth v. Davis***, 440 A.2d 1185, 1188 (Pa. 1981). For example, in ***Davis***, the trial judge instructed the sheriffs to take the defense attorney into custody because he had interrupted the court. ***Id.*** at 1186–87. Considering the possible effect on the jury, the high court held that the defendant was entitled to a new trial. ***Id.*** at 1188. By contrast, however, our Supreme Court has also held that three "isolated comments" by a trial judge, "which were directed solely to counsel and not his client, did not reach the level where it could be reasonably concluded that [the defendant] was deprived of a fair and impartial trial." ***Commonwealth v. England***, 375 A.2d 1292, 1299 (Pa. 1977).

Here, the record does not reflect that the trial court's interactions with defense counsel showed disrespect or antagonism that deprived Dickerson of a fair trial before the jury. Rather, the trial court acted to ensure an organized process of selecting a jury and receiving evidence. Its comments were directed solely to counsel and not the defendant. Further, the trial court instructed the jury not to consider its interactions with the attorneys. Because the trial court's words and behavior did not distract the jury from assessing Dickerson's guilt or innocence as to the crimes charged, the trial court did not abuse its discretion by denying Dickerson's motion for a mistrial. Dickerson's third issue fails.

Judgment of sentence affirmed.

- 11 -

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/06/2023